# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## THOMASVILLE DIVISION

CHRISTOPHER YON BRANNON,   *
                              *

        Plaintiff,       *

                              *

v.                          *     CASE NO. 6:06-CV-36 (WLS)
                              *       42 U.S.C. § 1983

THOMAS COUNTY JAIL, et al.,    *

                              *

        Defendants.     *

## REPORT & RECOMMENDATION

_____Before the court is Defendants' Motion for Summary Judgment, filed on October 27, 2006. (R-30). Plaintiff was given an opportunity, and an extension of time to file a response, and finally filed his response nearly three months late[1] and after this recommendation was being written. For that reason, Plaintiff's extremely tardy response has not been considered in this Report and Recommendation. Defendant's Motion for Summary Judgment is now ripe for review.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure, dealing with motions for summary judgment, provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and

---

[1] Although pro se litigants are afforded leniency in the construction of filings, they are required to conform to the procedural rules. *Irvin v. Smith*, 2005 WL 1863279 (S.D. GA. May 24, 2005) (finding a summary judgment motion to be unopposed due to an untimely response under similar circumstances to the case at bar), *citing Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002), *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989).

> admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R. .Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-

moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991). Motions for summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidavits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidavits or other material in opposition to a summary judgment motion. If he fails or refuses to file any affidavits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law. Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or

certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party**. (emphasis added).

## DISCUSSION

In his complaint, the Plaintiff makes five individual claims. (R-2). Plaintiff alleges: 1) that his constitutional rights were violated by Thomas County when they "ignor[ed] the fact that [his] hand had two broken bones"; 2) that the Defendants denied him pain medication on the 4th and 5th of April, 2006; 3) that the Defendants failed to provide medical attention when Plaintiff complained of pain due to the tightness of his cast on April 21, 2006, and April 24, 2006; 4) that his constitutional rights were violated by Thomas County because they "continually deduct[ed] money from [his] account" without notice to him and "continually charged [him] for follow-up medical visits"; and 5) that his rights were violated because the Defendants failed to give him access to his criminal and medical records. (R-2). Plaintiff seeks monetary damages and "relief for pain and suffering." *Id*. Plaintiff also seeks to have "the continued failure of this agency to recognize an individual['s] request for medical assistance" exposed through the local media. *Id*. Specifically, Plaintiff seeks $250,000 for pain and suffering, $80,000 for negligence, $150,000 for medical malpractice,

$5,000 (plus court costs and lawyer fees) for the refusal to provide medical records and $100,000 for malpractice (non-specific). *Id.*

## Deliberate Indifference

In *Estelle v. Gamble*, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." 429 U.S. 97, 104-105, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251, (1976) rehearing denied 429 U.S. 1066, 97 S. Ct. 798, 50 L. Ed. 2d 785 (1977). However, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not give rise to a constitutional violation. *Id*. at 106. To establish that the Defendants were deliberately indifferent to his serious medical needs Plaintiff would be required to show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

As the claims address intertwining issues, Claims One, Two and Three will be addressed together. Plaintiff alleges that he reported an injury to his right hand to the jail medical officer on March 28, 2006, and that afternoon was taken for x-rays of his hand. (R-2, p. 4). Plaintiff claims that the Defendants violated his constitutional rights by ignoring "the fact that [his] hand had two broken bones." *Id*. Plaintiff claims that the medical officer informed him that his treatment had to be approved by the jail captain, thus he wrote Captain John Richards on April 3, 2006, complaining of pain in his hand. *Id*. Plaintiff states that he

received medical treatment for his hand, a cast, on April 5, 2006. *Id.* Plaintiff states that on March 28, 2006, he began taking pain medication for pain and inflamation while awaiting medical treatment. *Id.* Plaintiff alleges that his pain medication "ran out" on April 4, 2006. Plaintiff claims that he received no medication at all on the 4th and 5th of April, 2006. *Id.* Plaintiff claims that he did not receive pain medication until April 6, 2006, at 4:00 p.m. and that this delay in medication amounts to a denial of his "right" to medication. *Id.* Finally, Plaintiff claims the Defendants failed to provide medical attention when he complained of pain due to the tightness of his cast on April 21, 2006, and April 24, 2006, causing him to remove his cast prior to his doctor's appointment. *Id.*

In their Motion for Summary Judgment, Defendants argue that there is no genuine issue as to any material fact such that Defendants are entitled to judgment in their favor as a matter of law. Specifically, Defendant's argue: 1) that Defendant Thomas County Jail is entitled to summary judgment because it is not an entity capable of being sued; 2) that Defendant Powell, in his individual capacity is entitled to summary judgment because liability cannot be based on *respondeat superior* in a § 1983 actions; 3) Defendant Thomas County is entitled to summary judgment because it cannot be held liable on a theory of *respondeat superior* for § 1983 claims; 4) Defendants Powell and Richards, in their individual capacities, are entitled to summary judgment in connection with Plaintiff's allegation that his broken hand was ignored; 5) Defendants Powell and Richards are entitled to summary judgment because Plaintiff has presented no verifying medical evidence that an alleged delay in treatment caused a detrimental effect to Plaintiff; 6) Defendants are entitled

to summary judgment in connection with Plaintiff's complaint that he did not receive prescription pain medication on April 4-5, 2006; 7) Defendant Thomas County is entitled to summary judgment regarding Plaintiff's allegation that Bradley did not give medical attention to Plaintiff's complaints of pain on April 21, 2006; 8) Defendant Thomas County is entitled to summary judgment against Plaintiff's alleged claim regarding medical service co-pays deductions; 9) Defendant Thomas County is entitled to summary judgment in connection with Plaintiff's allegation that he requested but did not receive copies of his criminal and medical records; and 10) Defendants are entitled to summary judgment in their official capacities. (R-35). In addition to their Motion and Brief, Defendants submitted a Statement of Undisputed Material Facts (R-31), Plaintiff's medical records (R-32-2, Exhibit A), Medical Log Sheets (R-34-2) and Affidavits (R-32-1, 33, and 34-1).

As was stated, *supra*, to establish deliberate indifference, Plaintiff must present evidence that he possessed a serious medical need. If a serious need is demonstrated, Plaintiff must then establish that a prison official acted with deliberate indifference to a serious medical need by showing that the defendant had subjective knowledge of a risk of serious harm; that the defendant disregarded the risk; and that his conduct was more than mere negligence. *Brown v. Johnson,* 387 F.3d 1344, 1351 (11th Cir.2004).

The Defendants in this case contend that the Plaintiff was not treated with deliberate indifference, nor was there a delay in medical treatment. *Farmer v. Brennan*, a United States Supreme Court decision, held that "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities" to support a plaintiff's position.

*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994).

Although Plaintiff claims that he did not receive treatment for his broken hand until April 5, 2006, the record submitted shows otherwise. It is an undisputed fact that Plaintiff was examined by the medical officer on duty, Sonja Bradley, after he complained to her that he had injured his right hand. (R-32-1, Affidavit of Sonja Bradley). Officer Bradley stated that since 2001, she has "administered and facilitated medical treatment of inmates incarcerated at the Thomas County Jail (the "Jail")." *Id*. As part of her duties, Officer Bradley has "provided transportation for inmates to medical facilities outside of the Jail campus, administered prescription drugs to inmates, processed intake information concerning medical treatment needs of inmates, [and] processed inmate medical request forms reviewed by physicians and other medical treatment providers before examination and medical treatment of inmates." *Id*. Officer Bradley stated that she had treated Christopher Von Brannon, Plaintiff, on a number of occasions while he was incarcerated in the Jail. *Id*. Officer Bradley attached to her Affidavit as "Exhibit A," records "regarding medical treatment to Plaintiff that is discussed in this Affidavit." *Id*. Officer Bradley stated that she "either authored these records or reviewed these records during [her] treatment of Plaintiff and in preparation of [her] Affidavit. *Id*. Officer Bradley testified in her affidavit that on March 28, 2006, Plaintiff complained to her that he had injured his right hand. *Id*. Officer Bradley "gathered information from Plaintiff which [she] used to complete a Prisoner Medical Request Form on his behalf so that Plaintiff's hand could be treated by Dr. Roland Brown." *Id*. Although Officer Bradley asked Plaintiff how he injured his hand, Plaintiff

refused to tell her the cause of injury. *Id*. Officer Bradley examined Plaintiff's hand and found it to be swollen. *Id*. Officer Bradley also weighed Plaintiff and took his temperature, which was normal. *Id*. Officer Bradley noted on Plaintiff's Prisoner Medical Request Form that it was rumored that Plaintiff was involved in a fight the night before. (R-32-2, p.16). Plaintiff was then seen by Dr. Roland Brown (hereinafter, "Dr. Brown") at the Jail. (R-32-1). Dr. Brown examined Plaintiff's hand and wrist. *Id*. Dr. Brown noted that Plaintiff's entire right hand was very swollen, but that Plaintiff's wrist was not swollen. (R-32-2, p.16). Dr. Brown noted that he could not ascertain bruising, due to the dark complexion of Plaintiff's skin, and noted that Plaintiff was unable to make a fist. *Id*. Dr. Brown noted a probable fracture at the fourth or fifth metacarpal and recommended x-rays of Plaintiff's right hand. *Id*. Dr. Brown prescribed Hydrocodone (used to treat pain) and Indomethacin (used to treat pain and swelling). (R-32-2, p. 17-18). In her affidavit, Officer Bradley stated that although Dr. Brown did not order refills for Plaintiff's pain medications, over the counter pain medication was available to Plaintiff at all times during his incarceration. (R-32-1, p.3). Officer Bradley stated that Plaintiff's prescriptions were filled on March 28, 2006, and the records attached as "Exhibit A" confirm such. (R-32-1 and 32-2). On that same day, Officer Bradley transported Plaintiff to the Archbold Imaging Center in Thomasville for x-rays. (R-32-2, p.10-11). After the x-rays, Plaintiff was "ordered to await the radiology report" and was transported back to the Jail. (R-32-1, p.3).

Dr. Thomas C. Johnson performed the radiologic consult which included a three-view radiograph of Plaintiff's right hand. (R-32-2, p.10-11). The clinical data gathered for the

x-rays noted that Plaintiff had been involved in an altercation and attributed the injury to trauma. *Id*. Dr. Johnson noted swelling in Plaintiff's hand. *Id*. Dr. Johnson determined that Plaintiff had an "[a]ngulated impaction fracture involving the distal fourth metacarpal," an "[a]ngulated impaction fracture involving the base of the fifth metacarpal," and an indication of a prior fracture involving the fifth metacarpal. *Id*. Although the x-ray images were taken on March 28, 2006, the radiology report indicates that Dr. Johnson did not transcribe his findings until the next day, March 29, 2006. *Id*.

On March 30, 2006, Officer Bradley read and discussed the radiology reports with Plaintiff. (R-32-1, p.4). The record indicates that Officer Bradley filled out a Prisoner Medical Request Form for Plaintiff on that same date, and noted that she had discussed the radiology results with Plaintiff. (R-32-2, p.9). On the afternoon of Friday, March 31, 2006, Plaintiff was again examined by Dr. Roland Brown. (R-32-1, p.4). Following the examination, "Dr. Brown noted that Plaintiff needed to be referred to an orthopedist as soon as possible." *Id*. On April 4, 2006, the jail administrator, Captain John Richards, "approved an appointment with an orthopedist and an appointment was scheduled for the next morning, April 5, 2006, at 8:15 a.m., with Dr. Frederick R. Nusbickel ("Dr. Nusbickel"), at Thomasville Orthopedic, P.C. ("Thomasville Orthopedic")." (R-33 and R-32-1, p.4). On the morning of April 5, 2006, Officer Bradley took Plaintiff to his appointment at Thomasville Orthopedic where Plaintiff was examined by Dr. Nusbickel. (R-32-1, p.4). In his notes, Dr. Nusbickel noted that Plaintiff had an "old fracture [in his right hand] that has healed at the base of the thumb, the first metacarpal and he has fractures of the fifth

metacarpal that was fixed and healed in a slightly flexed position." (R-32-2, p.7). Dr. Nusbickel noted "pain and tenderness at the base of the fifth metacarpal and at the distal end of the fourth metacarpal and sure enough he has fractures in both of these areas." *Id*. Dr. Nusbickel performed a reduction and placed Plaintiff in a gauntlet cast. *Id*. After the reduction, x-rays were again taken and showed Plaintiff's hand "to be in good position," and Dr. Nusbickel stated that it "should heal fine." *Id*. Dr. Nusbickel ordered a follow-up appointment to be scheduled for three weeks later. *Id*. In his report, Dr. Nusbickel ordered a repeat of the x-rays and stated that "if everything looks good," Plaintiff could be taken "out of the gauntlet cast." *Id*. Plaintiff's follow-up appointment was scheduled for April 26, 2006, at 10:30 a.m. (R-32-2, p.8). Plaintiff was given cast care instructions which included an instruction in bold print that stated that Plaintiff should not get his cast wet. *Id*. In her affidavit, Officer Bradley stated that on or about April 5, 2006, Plaintiff was "prescribed Tramadol, a pain medication, which was filled on April 6, 2006." (R-32-1, p.5 and 32-2, p.6). On April 7, 2006, Plaintiff complained that his cast was rubbing against his thumb. (R-32-1, p. 5). In response, Officer Bradley "transported Plaintiff back to Thomasville Orthopedic where a member [of] the medical staff there trimmed Plaintiff's cast so that it would not be rubbing his thumb." *Id*.

In her affidavit, Officer Bradley stated that Plaintiff did not complete any Prisoner Medical Request Forms while awaiting his three week follow-up. *Id*. Officer Bradley stated that "[o]n or around Monday, April 24, 2006, Plaintiff took a shower at the Thomas County

Jail and intentionally tore his cast off while he was in the shower." *Id*. Two days later, after

removing his cast, Plaintiff returned to Dr. Nusbickel on April 26, 2006, for his scheduled

follow-up appointment. *Id*. Dr. Nusbickel examined Plaintiff. *Id*. After examining

Plaintiff, Dr. Nusbickel placed Plaintiff's hand in a splint. *Id*. Dr. Nusbickel authored a

report in which he stated:

> The patient comes to the clinic today, continues to be
> incarcerated, and he took his cast off. He has a fracture of his
> 4th metacarpal and 5th metacarpal. He took his cast off at the
> first of the week and says that it hurt and therefore [he] removed
> it. I told him that we will put him in a splint, and he can use the
> splint for three weeks but other than that, I am not going to
> follow him back, I am not going to waste my time with a
> noncompliant patient like this. He is not remorseful, apologetic,
> etc.

(R-32-2, p.3). As for any further treatment, Dr. Nusbickel stated, "[o]ur plan will be that I

will not follow him back. He took it upon himself to discontinue the immobilization we had

prescribed, and he can deal with the consequences of that." *Id*.

Officer Bradley stated that before Plaintiff left Thomasville Orthopedics, he was given

a brace to wear on his hand. (R-32-1, p.6). Also before leaving, Plaintiff executed an

Authorization for Release of Information which authorized the release of Plaintiff's medical

records and office notes from Thomasville Orthopedic Center, P.C. to Officer Bradley for

the following purpose: "I/m [inmate] removed cast before scheduled." (R-32-2, p.4). Said

release was signed by Plaintiff. *Id*.

On April 27, 2006, Plaintiff completed a Prisoner Medical Request Form. (R-32-1,

32-2). Plaintiff complained of pain in his right hand, pain which was similar to the pain he felt before receiving the cast. *Id*. Plaintiff also complained that the brace, given to him by Dr. Nusbickel, was causing pain. *Id*. Both Officer Bradley and Dr. Brown reviewed Plaintiff's April 27, 2006, Prisoner Medical Request Form prior to the doctor's call held at the jail on April 28, 2006. (R-32-1). Despite his medical request the day before, Plaintiff refused to see Dr. Brown during doctor's call on April 28, 2006. *Id*.

Nearly a month later, on May 23, 2006, Plaintiff completed another Prisoner Medical Request Form. (R-32-2, p.1). Plaintiff complained that his right hand didn't have any strength; that he couldn't put any pressure on it and if he did, it hurt; that he couldn't close his hand all the way; and his hand was still swollen. *Id*. In his request, Plaintiff stated, "[t]he symptoms of having a fractured bone [are] still present. I can feel the bone moving around." *Id*. Officer Bradley reviewed the request, noting that Plaintiff had already been seen by an orthopedist and that Plaintiff had been released from his care due to non-compliance with the doctor's orders. *Id*. Plaintiff apparently requested that he be allowed to see another orthopedist. *Id*. Officer Bradley relayed Plaintiff's request "up front for approval." *Id*. Captain Richards denied Plaintiff's request to see a second orthopedist. *Id*. On May 24, 2006, Plaintiff's complaint was filed. (R-2).

In order to survive summary judgment, Plaintiff must provide evidence that his medical need was serious. The Eleventh Circuit has held that a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that

13

is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003); (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir.1994)). In either of these situations, the medical need must be "one that, if left unattended, 'pos[es] a substantial risk of serious harm.'" *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000) (quoting *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970, 128 L.Ed.2d 811). Following precedent, then, would suggest that Plaintiff's broken hand was indeed a serious medical need as it was diagnosed by a physician requiring treatment.

The United States Court of Appeals for the Eleventh Circuit has also held that the seriousness of a prisoner's medical needs could be evaluated by reference to the effect of delay in treatment.

> Where the delay results in an inmate's suffering a life-long handicap or permanent loss, the medical need is considered serious. An inmate who complains that delay in medical treatment rose to a constitutional violation **must place verifying medical evidence in the record** to establish the detrimental effect of delay in medical treatment to succeed."

*Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994) (emphasis added). In this case, Plaintiff has argued delay in medical care. Plaintiff states in his complaint that he did not receive medical care until days after notifying jail personnel of his injury. (R-2). Defendants, however, have submitted affidavits and exhibits that specifically detail Plaintiff's treatment. (R-32-1, 32-2 and 34-2). As shown in the undisputed

facts above, Plaintiff received treatment immediately upon notifying Officer Bradley of his hand injury. Additionally, although Plaintiff claims that he complained of pain on April 21 and 24, 2006, he provides no documentation. Defendants, however, provided the affidavit of Officer Bradley in which she stated that Plaintiff did not complete any Prisoner Medical Request Forms while awaiting his three week follow-up. (R-32-1). The documentation provided by Defendants, in facts, indicates that as soon as Plaintiff complained of injury or pain (such as his cast rubbing), Plaintiff was taken for treatment. Plaintiff has completely failed to place verifying medical evidence in the record to establish **any** delay in medical treatment. Furthermore, Plaintiff has failed to place any evidence into the record regarding any detrimental effect of the alleged delay in medical treatment. Therefore, Plaintiff's argument of "delay in medical care" is without merit. However, as stated above, Plaintiff's broken hand would be considered a serious medical need as it was diagnosed by a physician as requiring treatment. Therefore, Plaintiff's first three claims must be evaluated under the second part of the *Estelle* test.

The second part of the *Estelle* test, requires a plaintiff to prove "deliberate indifference" on the part of the Defendants. The standard of "deliberate indifference" separates constitutional claims that are compensable under §1983 from tort claims. In *Farmer v. Brennan*, the Supreme Court held that deliberate indifference should be evaluated from a subjective standpoint -- what the defendant prison official actually knew.

> [A] prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of

15

confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment

*Farmer* at 837-38. The United States Court of Appeals for the Eleventh Circuit interpreted the subjective test in *Farmer*, as requiring summary judgment to be granted for the defendant prison official unless the plaintiff presents evidence, albeit circumstantial, of the official's subjective knowledge. *Campbell v. Sikes*,169 F.3d 1353, 1364 (11th Cir. 1999) (quoting *Steele v. Shah*, 87 F.3d 1266, 1269 (11th Cir.1996)).

A review of the medical records submitted by the Defendants, along with the sworn affidavits of the Defendants, fails to reveal any deliberate indifference to the Plaintiff's broken right hand, his need for medication or Plaintiff's complaints of pain. Plaintiff does not deny that he received treatment for his broken hand, but merely claims that he should have received different treatment. (R-2). As previously stated, the course of treatment is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. A mere disagreement between a prisoner and prison officials as to diagnosis or treatment does not

give rise to a constitutional violation. *Id*. at 106. Furthermore, and un-rebutted by Plaintiff, is Defendants' attestation of: 1) Plaintiff's non-compliance with his orthopedist and his latter refusal of medical care by Dr. Roland Brown at the Thomas County Jail; 2) the lack of any request from Plaintiff on April 4, 5 or 6, 2006, for pain medication; and 3) the availability of over-the-counter pain medication. (R-32-1and 32-2). Additionally, Defendants were aware of Dr. Nusbickel's initial diagnosis that Plaintiff should "heal fine" wearing a cast for three weeks and then a brace for three weeks. (R-32-1and 32-2). Thus, when Plaintiff removed his cast just two days before his appointment and was released from Dr. Nusbickel's care with a brace, there was no reason for the staff at the Thomas County jail to question his findings or plan of treatment. Plaintiff has failed to establish that any of the Defendants acted with deliberate indifference to a serious medical need by showing that the defendants had subjective knowledge of a risk of serious harm; that the defendants disregarded the risk; and that the defendants conduct was more than mere negligence.

As such, Plaintiff has failed to show that the actions of the Defendants constituted deliberate indifference to his medical needs. Therefore, it appears that the Defendants have met their initial burden of showing that no genuine issue of material fact remains for determination by the trier of fact. As such, the burden shifts to the Plaintiff to rebut that presumption. Having failed to provide the court with any evidence to refute the Defendant's claims, it appears that Plaintiff has failed to establish that any issues of fact remain to be determined.

## Co-pay Deductions

In Claim Four, Plaintiff alleged that the Defendants violated his rights by "continually deducting money from [his prison] account without notice to [him] (no receipts). And continually charging [Plaintiff] for the follow up medical visits (and unknown deductions)." (R-2, p.5). In response, the Defendants submitted the sworn Affidavit of Charity Manwaring (R-34-1), and "Exhibit A" (R-34-2), the doctor call sign up sheets relevant to Plaintiff's claim. Charity Manwaring, employed by Thomas County, is the administrative assistant to the Sheriff and is familiar with the inmate commissary account deductions at the Thomas County Jail. (R-34-1). A commissary account allows inmates at the jail to deposit and deduct money. *Id*. "Co-pays for medical services are deducted if an inmate is examined by a physician at the inmate's request." *Id*. Co-pays "for medical services [are] limited to a five dollar deduction from the inmate's commissary account for each doctor's visit." *Id*. An inmate must have a minimum balance of ten dollars in his commissary account for a deduction to be made for medical service co-pays. *Id*. In her affidavit, Charity Manwaring explained the deductions further, stating:

> Deductions from an inmate's account for medical service co-pays, subject to the limit of five dollars each, are only deducted from that amount of commissary account credit an inmate has in excess of ten dollars. If an inmate's commissary account balance, in excess of ten dollars, is less than the amount owed for medical service co-pays, the commissary account will be deducted for the entire amount over ten dollars (subject to the limit of five dollars each for each co-pay) and the remainder will be deducted if a later deposit is made into the commissary account. For this reason, the date of deductions do not

18

> necessarily match the date that medical services are provided to
> an inmate.

(R-34-1, p.2). In her affidavit, Ms. Manwaring then carefully compared Exhibit A (R-34-2),

attached to her affidavit, with the certified copy of Plaintiff's trust account submitted by him

on May 9, 2006 (R-1), to explain the charges showing. (R-34-1). On March 28, 2006, when

Plaintiff saw Dr. Roland Brown, he incurred a five dollar charge. *Id*. Plaintiff then visited

Archbold Imaging Center for x-rays and incurred a second five dollar charge on that same

date. *Id*. On March 28, 2006, Plaintiff only had $10.05 in his commissary account. (R-1,

R-34-1, and R-34-2). As withdrawals are only made from any amount **over** ten dollars, only

$0.05 was withdrawn on March 28, 2006. *Id*. This left Plaintiff with a balance of $9.95

owed for his two medical services appointments. *Id*. A deposit of $20.00 was made into

Plaintiff's account on April 3, 2006, bringing his account balance to $30.00. *Id*. On that

date, a withdrawal was made for $4.95, which added to the $0.05 taken out on March 28,

2006, equaled the $5.00 co-pay owed for Plaintiff's visit with Dr. Brown. *Id*. On April 3,

2006, a second withdrawal for $5.00 was made for medical services, which covered the co-

pay for the x-rays at Archbold Imaging Center. *Id*. On April 5, 2006, when Plaintiff had a

doctor's appointment with the orthopedist, Dr. Nusbickel, his commissary account balance

was only $10.15. *Id*. Therefore, only $0.15 was withdrawn on April 7, 2006, in regards to

that $5.00 medical services co-pay owed by Plaintiff. *Id*. On April 25, 2006, a deposit of

$20.00 was made into Plaintiff's commissary account, bringing his balance to $30.00. *Id*.

On that same date, the remaining $4.85 owed from Plaintiff's April 5, 2006, appointment

with Dr. Nusbickel was withdrawn from Plaintiff's account. Plaintiff had another appointment with Dr. Nusbickel on April 26, 2006, for which he was charged a $5.00 medical services co-pay. *Id*. This amount was withdrawn from Plaintiff's account on April 28, 2006. *Id*. Thus, the evidence provided shows that Plaintiff was not over-charged for medical services or charged for services he never received. *Id*. In fact, the evidence provided shows that the jail failed to charge Plaintiff for at least two of his medical appointments, March 17, 2007 with Dr. Brown and April 7, 2006, with Dr. Nusbickel. Additionally, the evidence in Exhibit A (R-34-2), shows that Plaintiff Brannon signed for his appointments and received a numbered receipt. Perhaps more importantly, Plaintiff has failed to identify any constitutional right allegedly violated by the commissary account deductions. Therefore, Plaintiff's arguments in Claim Four regarding his commissary account, fees charged by the jail for medical services, and his lack of receipts, are without merit.

**Criminal and Medical Records**

In Claim Five, Plaintiff alleges that Thomas County violated his rights by refusing to give him access to his own criminal and medical records. (R-2). Plaintiff alleges that on April 21, 2006, his request for access to his criminal records was refused by the jail administrator and his request for medical records was refused by Officer Bradley. *Id*. Plaintiff claims that on April 24, 2006, he filled out "a medical information release form asking for the information [he] needed." *Id*. Plaintiff alleges that he was questioned and

again his request was refused. *Id*. Plaintiff alleges that he wrote the Jail Captain, John Richards, requesting his medical records for the third time and received no response. *Id*.

In response, Defendants filed the Affidavit of Captain John Richards, the jail administrator. (R-33). In his sworn Affidavit, Captain Richards stated that personnel of the Sheriff had "conducted diligent searches, during the course of this litigation, for written requests allegedly authored by Plaintiff dated April 21, 2006, April 24, 2006, or May 16, 2006," and that no such requests for criminal or medical records had been discovered. *Id*. Officer Bradley stated in her Affidavit (R-32-1), and such was shown by exhibit (32-2, p.4), that Plaintiff signed an Authorization for Release of Information on April 26, 2006, authorizing Thomasville Orthopedic, P.C. to release his medical records and office notes to Officer Bradley. In addition, counsel for the Defendants stated in their Brief in Support of the Motion for Summary Judgment that all documents known to exist that Defendants are in possession of, which meet the description of Plaintiff's "medical records" have been provided to Plaintiff by counsel for Defendants. (R-35). Furthermore, although Plaintiff has failed to specify what "criminal records" he was requesting, Defendants have argued that such records would not be kept by them but presumably would be maintained by the District Attorney's Office.

More importantly, Plaintiff has failed to identify any constitutional right that the Defendants have allegedly violated. There is no per se "constitutional right" to have a jail or prison facility provide a prisoner with a copy of his medical records or criminal records.

Criminal records may be requested from the proper authority, presumably the District Attorney's Office or the clerk's office where an individual was prosecuted. Medical Records may be requested by individuals from the facility (hospital, physician's office, jail, etc.) where they were treated. Although some production of medical documents from a jail treatment facility may be required through a due process (access to the courts) claim, Plaintiff has made no such claim here. Plaintiff has made bare assertions and failed to provide any documentation of even a simple request for said records. Defendants, on the other hand, have provided sworn affidavits that no such requests were made by Plaintiff on the stated dates and have stated that any medical documents in possession of the Defendants have already been produced. As to this issue, Defendants have once again met their burden by showing though no genuine issue of material fact remains and Plaintiff has failed to provide any evidence to rebut such.

## CONCLUSION

To preclude summary judgment once the Defendants have provided evidence failing to show that any issues of fact remain, the Plaintiff must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder. *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). As stated above, genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which

should be submitted to the trier of fact for final determination. Having submitted sworn statements, the Defendants, as the moving parties, have met their burden of proof. That is, they have demonstrated to the court the basis for each of their motions which they believe show that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he failed to respond in a timely manner. The evidence was examined by this court in a light more favorable to the Plaintiff, as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). Therefore, it is recommended that Defendants' Motion for Summary Judgment be granted as Plaintiff has failed to provide evidence to show that any material fact upon which relief may be granted still exists.

On April 9, 2007, Plaintiff filed a Motion to Amend/Correct his Complaint (R-39), which Plaintiff would not be entitled to without leave of court under Federal Rule of Civil Procedure 15, as the Defendants had already filed an answer. Having recommended that Defendants' Motion for Summary Judgment be Granted, it is also recommended that Plaintiff's outstanding Motion to Amend/Correct his Complaint be DENIED as moot.

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Defendants' Motions for Summary Judgment filed on their behalf be **GRANTED** as to all Claims. Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN

TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 11th day of May, 2007.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc